RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FEB 0 9 2026
DANIEL J. McCOY, CLERK
BY: ____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

JEREMY RACHAL (#590548)
PLAINTIFF

CIVIL ACTION No.: ____

VERSUS

LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS; GARY WESCOTT, SECRETARY OF LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS; SETH SMITH, CHIEF OF OPERATIONS OF LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS; MICHELE DAUZAT, WARDEN OF DAVID WADE CORRECTIONAL CENTER; BRENDA ACKLIN, DEPUTY WARDEN OF DWCC; JAMES ARNOLD, DEPUTY WARDEN OF DWCC; JAMES BURGOS, ASSISTANT WARDEN OF DWCC; RYAN KIMBLE, ASSISTANT WARDEN OF DWCC; RODERICK MALCOM, ASSISTANT WARDEN OF DWCC; DAKOTA NAUTT, COLONEL OF DWCC; VINCENT COLEMAN, COLONEL OF DWCC; TERRANCE HAULCY, COLONEL OF DWCC; JOCELYN BRADFORD, LIEUTENANT COLONEL OF DWCC; MATTHEW ELMORE, MAJOR OF DWCC; NATHANIEL GILLENTINE, MAJOR OF DWCC; MICHAEL CORLEY, CAPTAIN OF DWCC; LIEUTENANT REED OF DWCC; JOHN STANLEY, MASTER SARGEANT OF DWCC; KRISTEN HARPER, CLASSIFICATION OFFICER OF DWCC; DANNY HENSHAW, CLASSIFICATION OFFICER OF DWCC; SARAH NAUTT, LEGAL LIAISON OF DWCC; DANIEL CROOK, DOCTOR OF DWCC; AND ANGELA RUSSELL, NURSE PRACTITIONER OF DWCC.
DEFENDANT(S)

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

Plaintiff, Jeremy Rachal (#590548), appearing pro se, alleges the following:

## I. JURISDICTION

1. This is a civil action brought pursuant to 42 U.S.C. § 1983, to redress the deprivation of rights under the color of state law and secured by the First, Eighth and Fourteenth Amendments to the

United States Constitution.

2. The court has jurisdiction under 28 U.S.C. §1331 and §1343(a)(3)-(4), as this action arises under the Constitution and laws of the United States.

3. The court has supplemental jurisdiction over the Plaintiff's state-law negligence claim under 28 U.S.C. §1367.

4. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. §§ 2283 and 2284, and Rules 65 of the Federal Rules of Civil Procedure.

6. The United States, Western District of Louisiana has proper venue under 28 U.S.C. §1391(b)(2), because it is where the events giving rise to these claims occurred.

## II. PARTIES

7. Plaintiff, Jeremy Rachal, is an inmate currently confined at David Wade Correctional Center, located in Homer, Louisiana, ("DWCC"), under the custody of the Louisiana Department of Public Safety and Corrections; and at all times relevant to this complaint, was a prisoner within the meaning of 42 U.S.C. §1997e(h).

8. Defendants are the following individuals, each sued in their individual and official capacities:

- Louisiana Department of Public Safety and Corrections ("La.DPS&C") is a division of the State of Louisiana charged with overseeing the custody and care of inmates in Louisiana prisons, including DWCC.
- Gary Wescott is the Secretary of La.DPS&C. In that capacity, he supervises Seth Smith, the Chief of operations; as well as, the rest of the employees of the La.DPS&C. Although he has authority over the entire Department in a supervisory capacity, he has delegated authority for certain tasks and responsibilities to subordinate employees.
- Seth Smith is the Chief of Operations of the La.DPS&C. He oversees the operations of La.DPS&C prisons, including DWCC; as well as, the general welfare of the inmates confined under the custody of the La.DPS&C. Also, he is responsible for ensuring that each prison is in compliance with the policies, rules and regulations of the La.DPS&C.

- Michele Dauzat is the Warden of DWCC. She is charged with overseeing the custody, care and general welfare of the inmates confined at DWCC. She implements the institutional policies and practices of DWCC and assigns duties to subordinate employees of DWCC; as well as, ensures that the subordinate employees follow all Departmental and institutional policies, rules and regulations.
- Brenda Acklin has been assigned Deputy Warden at DWCC. She is charged with **assisting** Warden Michele Dauzat with overseeing the custody, care and general welfare of the inmates confined at DWCC; as well as, the supervision of subordinate employees.
- James Arnold has been assigned Deputy Warden at DWCC. He is charged with assisting Warden Michele Dauzat with overseeing the custody, care and general welfare of the inmates confined at DWCC; as well as, the supervision of subordinate employees.
- James Burgos has been assigned Assistant Warden at DWCC. He has operational control over the Medical and Mental Health Services at DWCC. This includes, among other things, budgeting, hiring of certain classes of employees, medical and mental health records, and managing and supervising doctors, physicians, nurses, and mental health counselors and social workers.
- Ryan Kimble has been assigned Assistant Warden at DWCC. He has operational control over the Classification Department. This includes, assigning and classifying inmates to jobs, certain custody levels and inmate housing units; as well as, supervising subordinate employees assigned within this department.
- Roderick Malcom has been assigned Assistant Warden at DWCC. He has been assigned to the South Compound Security at DWCC, and is charged with overseeing the custody, care and general welfare of the inmates assigned and housed on the south compound; as well as, supervising subordinate employees assigned to the south compound.
- Dakota Nalitt is a Colonel at DWCC and has been assigned to the south compound security.[FN.1]

## FOOTNOTES

**FN.1** Dakota Nalitt has been promoted to Assistant Warden.

- Vincent Coleman is a Colonel at DWCC and **has** been assigned to DWCC Tactical/Shakedown Team.
- Terrance Hauley is a Colonel at DWCC and has been assigned to the south compound security.
- Jocelyn Bradford is a Lieutenant Colonel at DWCC and has been assigned to the south compound security.
- Matthew Elmore is a Major at DWCC and has been assigned to the south compound security.
- Nathaniel Gillentine is a Major at DWCC and has been assigned to the south compound security.
- Michael Corley is a Captain at DWCC and has been assigned to the south compound security.
- Reed is a Lieutenant at DWCC and has been assigned to the Shakedown Team.
- John Stanley is a Master Sergeant at DWCC and has been assigned to the Shakedown Team.
- Kristen Harper is a Classification Officer at DWCC and has been assigned to the south compound.
- Danny Hershaw is a Classification Officer at DWCC and has been assigned to the south compound.
- Sarah Nalitt is a Legal Liaison at DWCC and has been assigned to the Legal Program Department. Her duties include, among other things, screening and processing all grievances and administrative remedy requests filed by the inmate population; as well as, administering the correspondences between the inmates and the officials and administrators of DWCC and the Department.
- Daniel Crook is a Doctor/Physician employed or contracted by the La.DPS&C, and is responsible for administering medical care to the inmates confined at DWCC.
- Angela Fussell is a Nurse Practitioner employed or contracted by the La.DPS&C, and is responsible for administering medical care to the inmates confined at DWCC.
- DWCC has security video surveillance inside N1, N2, N3 and N4; inside and outside the South Compound Kitchen, Classification Office and Security Building. All security personel are required to wear body cameras and have them activated when handling inmates, esp. during and after incidents.
- DWCC prison officials are required to maintain and **pre**serve any and all recordings (audio, video, documentary, etc.) in **their** entirety, for 4-5 years, following final disposition

of administrative remedy request, grievances, and disciplinary appeals following disciplinary board hearings. La.Admin.Code tit. 22, Pt I §§ 325 and 341.

- Inmates assigned to DWCC South Compound can request to see a doctor or physician by submitting sick call request; and, in which, medical care may be administered in the South Infirmary.
- Inmates assigned to DWCC South Compound can request to see a mental health counselor or social worker upon awaiting for the social worker to make routine rounds or declaring themselves a mental health emergency; and, in which, mental health treatment will be administered cell-side.
- La.DPS&C and DWCC receive some Federal Funding.
- At all times relevant and mentioned within this complaint, each defendant acted under color of state law.

## III. STATEMENT OF FACTS

9. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

10. On January 25, 2025, at approx. 4:30 p.m., after being involved in an incident with Lieutenant Johnathan Wood [FN.2] between the South Compound buildings of N1 and N2 Walk while enroute to the South Kitchen for dinner, Captain Michael Corley, Master Sergeant Jeroy Bryant and Sergeant Daryl Burnell [FN.3] placed Plaintiff Jeremy Rachal ("Plaintiff") in handcuffs behind his back, and Captain Corley escorted Plaintiff to N1 Lobby along with Major Matthew Elmore.

11. Plaintiff was told to stand on the side of the Control Room between C and D Tiers; and, in which, Plaintiff did calmly and quietly for 10-15 minutes. Master Sergeant Martin was working N1.

---

**FN.2** Johnathan Wood has been promoted to the rank of Captain.

**FN.3** Daryl Burnell is no longer employed at DWCC.

12. Major Elmore and Captain Corley then escorted Plaintiff to N3 Lobby by escorting him out N1 backdoor through N2 Lobby and out its backdoor to N3 where Plaintiff was again told to stand on the side of the Control Room between A and B Tiers; and, in which, Plaintiff did calmly and quietly for another 10 minutes. Master Sergeant Montgomery, Sergeant Coleman[FN.4] and Sergeant Simpson[FN.5] were working N3.

13. Plaintiff was then escorted by Major Elmore and Captain Corley to the South Compound Security Building by going down the Walk pass the Kitchen and Classification Office. Enroute, Captain Corley went back to N3 to retrieve leg irons and placed them on Plaintiff's ankles without incident.

14. In the Security Building, Plaintiff was told to stand on the wall across from Asst. Warden Roderick Malcom office; and, in which, Plaintiff did calmly and quietly without incident for 20-25 minutes as Major Elmore and Captain Corley awaited the arrival of Colonel Vincent Coleman.

15. As Plaintiff awaited, he witnessed Captain Ri Dario Fields, Captain Kemonte Taylor, and Major Keande Hay come in the security building for shift change; as well as, witnessed Master Sergeant Bellamy and two (2) caucasian female prison officials present in the security building.

16. Upon Colonel Coleman's arrival he immediately grabbed Plaintiff roughly by the arm without provocation and escorted him out the security building to the classification office stating: "You wanna put your hands on my officers huh? I got something for you." Major Elmore and Captain Corley followed.

17. As **they** entered the classification office foyer to enter the main area, Colonel Coleman attempted to ram Plaintiff's head into the window which caused Plaintiff to turn to look backwards to see what he was doing. Major Elmore immediately sprayed Plaintiff with chemical agent in his face, and eyes which caused Plaintiff to jerk right and buckle to his knees. Plaintiff was then plundered repeatedly with closed fist strikes to his face, head and body areas by Colonel Coleman, Major Elmore, and Captain Corley of which caused Plaintiff to fall to the floor where he felt numerous feet kick and stomp him all over his body.

---

**FN.4** Sergeant Coleman is no longer employed at DWCC

**FN.5** Sergeant Simpson is no longer employed at DWCC.

18. Plaintiff was then dragged a few feet across the floor where he again received another series of closed fist strikes, kicks and stomps all over his body; as well as, another burst of chemical agent to his face.

19. After the last burst of chemical agent, Plaintiff was snatched off the floor and escorted out the classification office to N4B Tier, Cell #15.

20. While enroute to N4, Plaintiff overheard Colonel Coleman coach Major Elmore and Captain Corley into fabricating a story that Plaintiff attempted to headbutt one of the officers to justify their unreasonable and unnecessary use of excessive force.

21. Plaintiff was denied a shower which caused chemical agent to remain on his head face and body well over 24 hours.

22. At no time did Plaintiff attempt to headbutt any officer to warrant the assault he received from Colonel Coleman, Major Elmore and Captain Corley. Plaintiff always walked at least 2 or 3 steps ahead of the officers with his back to them fully restrained in leg irons and handcuffed behind his back; calmly, quietly and non-combatively; and, in which, will be shown on any and all activated body-worn camera, as well as, security surveillance outside and inside the classification office, security building, kitchen, and N1, N2, N3 and N4.

23. Nevertheless, Plaintiff received a disciplinary infraction for a Rule 3 violation — Defiance — from Major Elmore who claimed Plaintiff attempted to headbutt him and Captain Corley which resulted in Major Elmore "administering a short burst of chemical agent to Plaintiff's facial area. (R. Disciplinary Appeal No. DWCC-2025-035).

24. On January 31, 2025, a disciplinary hearing was held on Plaintiff for, among other things, the Rule 3 violation; and, in which, Lt. Colonel Jocelyn Bradford was Chairman of the Disciplinary Board.

25. Lt. Colonel Bradford found Plaintiff guilty of violating Rule 3 and sentenced him to (30) days Disciplinary Segregation. Plaintiff appealed the Disciplinary Board decision to the Warden. On Feburary 24, 2025, Warden Michele Dauzat found procedural error and that inmate was not allowed to present his statement, and remanded the matter for a rehearing. (R. Disciplinary Appeal No. DWCC-2025-035).

26. Rachal appealed Warden Dauzat decision to the La.DPS&C Secretary, Gary Wescott, and on April 30, 2025, Secretary Wescott rejected Plaintiff's appeal until a final disposition from the Warden. (R. Disciplinary Appeal No. DWCC-2025-035).

27. Plaintiff never received a Rehearing in Disciplinary Appeal No. DWCC-2025-035.

28. Also, Plaintiff appealed the La.DPS&C (and/or Secretary Wescott) decision to the 19th Judicial District Court, East Baton Rouge Parish, Louisiana ("19thJDC"); and, in which, the 19thJDC docketed Disciplinary Appeal No. DWCC-2025-035 under 19th JDC No. C-765208 Comm. C. The matter is currently pending before the 19th JDC for disposition.

29. Moreover, due to Colonel Coleman, Major Elmore, and Captain Corley unreasonable use of excessive force, Plaintiff also filed within the institution an inmate grievance or administrative remedy request ("ARP") of which Legal Liaison Sarah Nalitt logged under ARP No. DWCC-2025-0107. On or about Feburary 20, 2025, Legal Liaison Nalitt backlogged ARP No. DWCC-2025-0107 until completion of other ARPs Plaintiff had pending in the system.

30. Due to Legal Liaison Nalitt inappropriate and unreasonable backlogging of ARP No. DWCC-2025-0107, Plaintiff filed a March 28, 2025 Complaint to Warden Dauzat because Legal Liaison Nalitt was obstructing and mishandling the inmate grievance process by causing a delay in the review and disposition in his grievance. Warden Dauzat never responded to Plaintiff's complaint.

31. On Feburary 25, 2025, at approx. 10:00 a.m., Warden Dauzat made rounds on N4B Tier accompanied by Dep. Warden James Arnold, Asst. Warden Ryan Kimble, and Asst. Warden Dakota Nalitt and upon these officials reaching Cell #15, Plaintiff "personally" informed them that Colonel Coleman, Major Elmore, and Captain Corley physically assaulted him without justification on January 25, 2025, in the classification office as a form of retaliation for an incident that transpired earlier that day between Lt. Wood and Plaintiff. Plaintiff requested Warden Dauzat, Dep. Warden Arnold, Asst. Warden Kimble and Colonel Nalitt intervention and investigation into his allegations.

32. At the behest of Warden Dauzat, Plaintiff was advised that his allegations would not be investigated and that he deserved what he got. Plaintiff's mother, Sheila Rachal, even called DWCC and spoke with Warden Dauzat and Asst. Warden Malcom regarding the unreasonable use of excessive force; but to no avail.

33. Thereafter, on March 3, 2025, Plaintiff submitted a retaliation ARP to Legal Liaison Nalitt to redress Warden Dauzat, Dep. Warden Arnold, Asst. Warden Kimble, and Col. Nalitt unreasonable failure or refusal to investigate his allegations of excessive force. But, Legal Liaison Nalitt also, unreasonably failed or refused to process Plaintiff's ARP. Nevertheless, Plaintiff resubmitted the ARP to the La.DPS&C Chief of Operations, Seth Smith on April 7, 2025, but Plaintiff has failed to receive any correspondence or aid from Chief Smith. (R.

34. On June 25, 2025, ARP No. DWCC-2025-0107, was processed into DWCC inmate grievance system; and on July 31, 2025, Dep. Warden Brenda Achlin and Asst. Warden Malcom unreasonably denied Plaintiff's ARP at the "First-Step" by accepting the officers credibility over more reliable and probative evidence (body-worn camera footage and video surveillance) of which Plaintiff relied on for support. Plaintiff timely appealed Dep. Warden Achlin and Asst. Warden Malcom decision by noting his dissatisfaction with reasons and forwarding the appeal to Secretary Wescott. However, on October 31, 2025, Secretary Wescott denied ARP No. DWCC-2025-0107, without considering the more reliable and probative evidence—body-worn camera footage and video footage.

35. Moreover, on April 21, 2025, Plaintiff was transferred from DWCC to Louisiana State Penitentiary, but subsequently returned to DWCC on June 9, 2025.

36. Upon Plaintiff's return to DWCC, Warden Dauzat, Dep. Warden Achlin, Dep. Warden Arnold, Asst. Warden Kimble, Asst. Warden Malcom, Colonel Coleman, Major Nathaniel Gillentine, Classification Kristen Harper and Classification Danny Henshaw retaliated against Plaintiff for refusing to withdraw ARP No. DWCC-2025-0107 and Disciplinary Appeal No. DWCC-2025-035, by classifying and assigning Plaintiff to N4 Preventative Segregation Level I (an unauthorized segregation level that automatically relinquished or limited Plaintiff's canteen, telephone, television, electronic tablet, property, recreation, educational, vocational and rehabilitative program privileges without Plaintiff being guilty or sanctioned for a rule violation); as well as, by placing Plaintiff on a tier with a well-known and documented enemy, Cordell Wilder (#755139) when it was reasonably foreseeable that Plaintiff's health and safety was in a substantial risk of serious harm.

37. Also, due to Plaintiff's refusal to withdraw ARP No. DWCC-2025-0107 and Disciplinary Appeal No. DWCC-2025-035, Colonel Coleman, Lieutenant Reed and Master Sergeant John Stanley withheld

Plaintiff's legal documents, inter alia, in a deliberate effort to have Plaintiff barred out of the 19th JDC and/or any other court Plaintiff could redress the deprivation of his rights asserted herein.

38. Plaintiff submitted a ARP dated June 18, 2025 and a Classification Review Board Appeal dated June 20, 2025 through DWCC inmate grievance system, to redress the Defendants' unauthorized classification and assignment of him, to prolong isolation and indefinite Preventative Segregation Level 1 confinement that creates a atypical and significant hardship in relation to the ordinary incidents of prison life; as well as, Defendants' withholding of Plaintiff's legal documents without a legitimate penological justification. (R. Ex(s). D and E).

39. However, Legal Liaison Nalitt failed or refused to process Plaintiff's grievances. (R. D and E) Nevertheless, Plaintiff resubmitted the retaliation ARPs dated March 3, 2025 and June 18, 2025, to Chief Smith on July 7, 2025; but Chief Smith and/or Secretary Wescott has also failed to process Plaintiff's ARPs. (R.

40. Also, on September 22, 2025, Plaintiff was again transferred from DWCC to Louisiana State Penitentiary; but subsequently returned back to DWCC on October 27, 2025.

41. Upon Plaintiff's return, Warden Dauzat, Dep. Warden Aokliv, Dep. Warden Arnold, Asst. Warden Kimble, Asst. Warden Malcom, Colonel Terrance Hauley and Classification Officer Harper, again, retaliated against Plaintiff for refusing to withdraw ARP No. DWCC-2025-0107 and Disciplinary Appeal No. DWCC-2025-035, by classifying and assigning Plaintiff to N4 Preventative Segregation Level 1; and on November 5, 2025, destroying Plaintiff's personal property despite Plaintiff not being guilty or sanctioned for a rule violation.

42. Plaintiff submitted a Lost Personal Property Claim on November 10, 2025, through DWCC inmate grievance system; but Legal Liaison Nalitt refused or failed to process Plaintiff's grievance. (R. ). On December 8, 2025, Plaintiff resubmitted his Lost Personal Property Claim to Chief Smith; but Chief Smith and/or Secretary Wescott also, failed or refused to process Plaintiff's grievance. (R.

43. Moreover, it is well-known and documented that Plaintiff has a diagnostic history of a Depressive Disorder, Bipolar Disorder, Impulse Control Disorder, Personality Disorder, Borderline

Antisocial and Paranoid Traits. (R.

44. Due to Defendants unreasonable use of excessive force, on January 27, 2025, January 28, 2025, March 24, 2025, June 17, 2025, July 3, 2025, July 21, 2025, July 22, 2025, July 24, 2025, August 13, 2025, November 17, 2025 and December 8, 2025; Plaintiff has made repeated sick calls seeking medical attention for headaches and memory loss, pain in his right leg, wrist and elbow, hemerroids, and irritated and constricted foreskin. (R.

45. Despite Plaintiff's mental health diagnostic history, medical history of a subdural hematoma — a life-threatening traumatic brain injury —, and the above described medical issues; Warden Dauzat, Dep. Warden Achlin, Dep. Warden Arnold, Asst. Warden James Burgos, Secretary Wescott, Chief Smith, Doctor Daniel Crook and Angela Fussell retaliated against Plaintiff for refusing to withdraw ARP No. DWCC-2025-0107 and Disciplinary Appeal No. DWCC-2025-035, by demonstrating deliberate indifference to Plaintiff's medical and mental health, upon failing or refusing to appropriately assess and treat Plaintiff's medical and mental health conditions; failing or refusing to forward Plaintiff to an outside specialist for help treating his serious medical conditions; repeatedly transferring Plaintiff to and from DWCC to delay and obstruct the treatment of Plaintiff's serious medical condition; failing or refusing to provide Plaintiff mental health counseling; classifying and assigning Plaintiff to Preventative Segregation Level I, abridging and obstructing Plaintiff's right to access the courts, and destroying Plaintiff's personal property; and, in which, Defendants' done to exacerbate Plaintiff's medical condition and mental deterioration; as well as, subject Plaintiff to pain, swelling, bleeding, irritated and dry skin, headache and memory loss, stiff muscle and joints, anxiety, insomnia, blazing and fiery eyes and skin, elevated and irritable moods, grandiosity, sleeplessness, extravagance, erratic behavior, tendencies towards irrational judgments, as well as, episodes of depression (including lethargy, a sense of worthlessness, and a lack of concentration and attention).

46. Defendants' abuse and misconduct violated Plaintiff's rights guaranteed by the First, Eighth and Fourteenth Amendments to the United States Constitution.

## IV. CLAIM FOR RELIEF

COUNT I - Excessive Force (Eighth Amendment)

(42 U.S.C. § 1983)

47. Defendants Colonel Coleman, Major Elmore, and Captain Corley used unnecessary and wanton infliction of pain by repeatedly punching and kicking the Plaintiff and spraying him with chemical agent when he was non-combative and not resisting any command or order; as well as, fully restrained in leg irons with handcuffs behind his back; and, in which, violated Plaintiff's Eighth Amendment rights. See Hudson v. McMillian, 503 U.S. 1 (1992); Whitley v. Albers, 475 U.S. 312 (1986).

COUNT II - Retaliation for Exercising First Amendment Right of Access to Courts

(42 U.S.C. § 1983)

48. Plaintiff engaged in protected activity by filing grievances - ARP No. DWCC-2025-0107 and Disciplinary Appeal No. DWCC-2025-035. Defendants retaliated by (1) obstructing Plaintiff's right legal access upon knowingly and willfully filing false official reports, destroying relevant and material audio and video recordings, failing or refusing to reasonably investigate Plaintiff's grievances and allegations of excessive force, failing or refusing to process Plaintiff's retaliation ARPs and grievances dated March 3, 2025, June 18, 2025, June 20, 2025 and November 10, 2025 (R. ), and withholding and destroying Plaintiff's legal documents and personal property; (2) subjecting Plaintiff to a substantial risk of serious harm through deliberate indifference to Plaintiff's right to adequate medical and mental health care; and (3) subjecting Plaintiff to prolong isolation and indefinite segregation confinement under extremely harsh and atypical conditions without legitimate justification or due process. See Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995); Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005); Cf., Farmer v. Brennan, 511 U.S. 825 (1994); Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752 (5th Cir. 2001); and Sandin v. Conner, 515 U.S. 472 (1995); Wilkerson v. Goodwin, 774 F.3d 845 (5th Cir. 2014).

COUNT III - Deliberate Indifference to Serious Medical and Mental Health Needs

(Eighth Amendment; 42 U.S.C. §1983)

49. Defendants knew of Plaintiff's serious medical and psychiatric conditions, including subdural hematoma, extreme headaches, periodic memory loss, blurred vision, swollen right leg (thigh), irritated and constricted foreskin; as well as, Depressive Disorder, Bipolar Disorder, Impulse Control Disorder, Personality Disorder, Borderline Antisocial and Paranoid traits; and, in which; Defendants disregarded the substantial risks of harm upon deliberately failing or refusing to appropriately assess, diagnose and treat Plaintiff's serious medical conditions or forwarding Plaintiff to an outside specialist for diagnoses and treatment; failing or refusing to provide Plaintiff mental health counseling socially or individually; exposing Plaintiff to atypical and significant conditions of prolong isolation and indefinite segregation confinement to exacerbate Plaintiff's serious psychiatric conditions; and repeatedly transferring Plaintiff to and from DWCC to obstruct his recovery process. See Farmer v. Brennan, 511 U.S. 825 (1994); Gobert v. Caldwell, 463 F.3d 339 (5th Cir. 2006)

COUNT IV - Unconstitutional Conditions of Confinement & Indefinite Isolation

(Eighth and Fourteenth Amendments)

50. Plaintiff's segregation was imposed without legitimate justification and involves extremely atypical hardship where Defendants classified and assigned Plaintiff to an unauthorized level of segregation - Preventative Segregation Level 1 - unreasonably relinquished or limited Plaintiff's canteen, telephone, television, electronic tablet, property, recreation, educational, vocational and rehabilitative program privileges without Plaintiff being found guilty of any rule violation; and, in which, has subjected Plaintiff to (1) 23-24 hours per day locked in a small unsanitary cell, (2) denial of meaningful human contact and outside exercise, (3) minimum or no access to educational, vocational or rehabilitative programs, (4) sensory deprivation, denial of adequate hygiene, clothing, and basic necessities, (5) excessive noise and extreme temperatures, and (6) mental and physical deteriorations; in violation of

LaDPS&C policy and constitutional protections. See Wilkerson v. Stalder, 639 F. Supp. 2d 654 (M.D. La. 2007); Hernandez v. Velasquez, 522 F.3d 556 (5th Cir. 2008); Wilkinson v. Austin, 545 U.S. 209 (2005); La. Admin. Code tit. 22, Pt I § 341.

## V. INJURIES

51. Plaintiff suffered: (1) Neurological impairment, (2) Worsening of psychiatric conditions, (3) physical injuries from beating and chemical spray, (4) mental anguish and emotional trauma, (5) loss of sleep, chronic fear, hallucinations, confusion, disorientation and lack of focus or attention, and (6) Constitutional injuries and dignitary harm.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jeremy Rachal, respectfully pray this Honorable Court:

(1) Issue declaratory judgment that Defendants' actions violated Plaintiff's constitutional rights under the First, Eighth and Fourteenth Amendments.

(2). Grant injunctive relief, ordering **Defendants'** to: (a). Immediately cease their physical violation, threats, and hostile acts toward Plaintiff; (b). Immediately cease their retaliation tatics toward Plaintiff; (c) Immediately cease and refrain from obstructing Plaintiff's right to access the courts and grievance procedure; (d) Immediately provide Plaintiff the necessary medical care and implement treatment plans for Plaintiff's neurological therapy, swollen right leg (thigh), and irritated and constricted foreskin; (e) Immediately implement treatment plans and take steps to provide Plaintiff mental health care and counseling consistent with his mental health illnesses; and (F) Immediately remove Plaintiff from indefinite solitary/segregation pending resolution of this action, or implement plans and practices that allow Plaintiff at least eight (8) hours out-of-cell time per day for recreation, outdoor exercise, human contact, telephone, television, mental health monitoring and counseling, and educational, vocational and rehabilitative programs.

(3) Award compensatory and punitive damages against each Defendant, jointly and severally, in an amount to be determined at trial.

(4) Award costs of suit and reasonable attorney Fees under 42 U.S.C. §1988; and

(5) Grant any other relief this Court deems just and proper.

## VII. JURY DEMAND

Plaintiff hereby demands trial by jury on all issues triable by jury.

Respectfully Submitted this 26th day of December 2025.

(PLAINTIFF SIGNATURE)

Jeremy X. Rachal (590548)
David Wade Correctional Center
670 Bell Hill Road
Homer, Louisiana 71040
ProSe Plaintiff

Jeremy X. Rachal (#590548)
David Wade Correctional Center
670 Bell Hill Road
Homer, Louisiana 71040

RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FEB 0 9 2026
DANIEL J. McCOY, CLERK
BY: ____

January 26, 2026

ATTN: Clerk, United States District Court
Western District of Louisiana
Tom Stagg United States Courthouse
300 Fannin Street, Suite 1167
Shreveport, Louisiana 71101-3083

RE: Filing of Pleadings Pursuant to 42 U.S.C. §1983; Fed.R.Cv.P. 65; inter alia, and
NEED IMMEDIATE COURT INTERVENTION!

Dear, Tony R. Moore, Clerk:

Pursuant to the above referenced, please find enclosed to be filed in this Honorable Court, one (1) Civil Rights Complaint pursuant to 42 U.S.C. §1983, one (1) Summons, and one (1) Motion for Temporary Restraining Order and Preliminary Injunction with attached Memorandum of Law in Support [thereof]. Regarding these pleadings, Plaintiff previously attempted to file these pleadings with the Court on December 29, 2025, by giving these documents to DWCC prison official Master Sergeant Daryl Island for mailing/service. However, [Defendants] intercepted my legal documents and lost or destroyed my legal documents to prevent my initial attempt to file and obstruct my right to access the courts. Due to such, and until this Court can intervene in this matter, I am and will be forced to mail out my legal documents through a fellow inmate in an attempt to prevent further obstruction of my right.

Thus, Plaintiff respectfully request that after review of these pleadings this Honorable Court consider this matter a priority and promptly enter any order(s) this Court deems just and proper.

Thank you for your time, effort and assistance in this matter.

Respectfully Submitted,

Jeremy X. Rachal (590548)