UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

SEP 2 1 2026

DANIEL J. McCOY, CLERK
BY: mdh

JEREMY RACHAL (#590548)
PLAINTIFF

VERSUS

LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS, ET AL.
DEFENDANT(S)

CIVIL ACTION NO. 26-403-P

JUDGE VAN HOOK

MAGISTRATE JUDGE HORNSBY

PLAINTIFF'S MOTION FOR LEAVE TO AMEND ORIGINAL CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983

Now Into Court comes Jeremy Rachal, (590548), Plaintiff, in the above entitled matter, who respectfully moves this Honorable Court on a Motion for Leave to Amend Original Civil Rights Complaint (R.Doc.No.1) pursuant to Rule 15 of the Federal Rules of Civil Procedure, and as instructed by this Court's August 18, 2026 Memorandum Order (R.Doc. No.13). As instructed by this Court's Order (R.Doc.No.13); Plaintiff represents the Following:

## I. PARTIES

1. Plaintiff, Jeremy Rachal, is an inmate currently confined at David Wade Correctional Center, located in Homer, Louisiana, ("DWCC"), under the custody of the Louisiana Department of Public Safety and Corrections; and at all times relevant to this complaint, was a prisoner within the meaning of 42 U.S.C. § 1997e(h).

2. Defendants' are the following individuals, each sued in their individual and official capacities:

- Louisiana Department of Public Safety and Corrections ("La.DPS&C") is a division of the State of Louisiana charged with overseeing the custody and care of inmates in Louisiana prisons, including DWCC.

- Gary Wescott is the Secretary of La.DPS&C. In that capacity, he supervises Seth Smith, the Chief of Operations; as well as, the rest of the employees of the La.DPS&C. Although he has authority over the entire Department in a supervisory capacity, he has delegated authority for certain tasks and responsibilities to subordinate employees.
- Seth Smith is the Chief of Operations of the La.DPS&C. He oversees the operations of La.DPS&C prisons, including DWCC; as well as, the general welfare of the inmates confined under the custody of the La.DPS&C. Also, he is responsible for ensuring that each prison is in compliance with the policies, rules and regulations of the La.DPS&C.
- Michele Dauzat is the Warden of DWCC. She is charged with overseeing the custody, care and general welfare of the inmates confined at DWCC. She implements the institutional policies and practices of DWCC and assigns duties to subordinates empolyees of DWCC; as well as, ensures that the subordinate employees follow all Departmental and institutional policies, rules and regulations.
- Brenda Acklin has been assigned Deputy Warden at DWCC. She is charged with assisting Warden Michele Dauzat with overseeing the custody, care and general welfare of the inmates confined at DWCC; as well as, the supervision of subordinate employees.
- James Arnold has been assigned Deputy Warden at DWCC. He is charged with assisting Warden Michele Dauzat with overseeing the custody, care and general welfare of the inmates confined at DWCC; as well as, the supervision of subordinate employees.

- James Burgos has been assigned Assistant Warden at DWCC. He has operational control over the Medical and Mental Health Services at DWCC. This includes, among other things, budgeting, hiring of certain classes of employees, medical and mental health records, and managing and supervising doctors, physicians, nurses, and mental health counselors and social workers.
- Ryan Kimble has been assigned Assistant Warden at DWCC. He has operational control over the Classification Department. This includes, assigning and classifying inmates to jobs, certain custody levels and inmate housing units; as well as, supervising subordinate

employees assigned within this department.

- Roderick Malcom has been assigned Assistant Warden at DWCC. He has been assigned to the South Compound Security at DWCC, and is charged with overseeing the custody, care and general welfare of the inmates assigned and housed on the south compound as well as, supervising subordinate employees assigned to the south compound.
- Dakota Nalitt is a Colonel at DWCC and has been assigned to the south compound security.[FN.1]
- Vincent Coleman is a Colonel at DWCC and has been assigned to DWCC Tactical/Shakedown Team.
- Terrance Hauley is a Colonel at DWCC and has been assigned to the south compound security.
- Jocelyn Bradford is a Lieutenant Colonel at DWCC and has been assigned to the south compound security.
- Matthew Elmore is a Major at DWCC and has been assigned to the south compound security.
- Nathaniel Gillentine is a Major at DWCC and has been assigned to the south compound security.
- Michael Corley is a Captain at DWCC and has been assigned to the south compound security.
- Reeves is a Lieutenant at DWCC and has been assigned to the Shakedown Team.[FN.2]

---

## FOOTNOTES

**FN.1** Dakota Nalitt has been promoted to Assistant Warden and reassigned to DWCC North Security.

**FN.2.** In Plaintiff's original complaint Reeves name was spelled Reed. (R.Doc.No.1, pp.4). However, the correct spelling is Reeves and he has been promoted to Captain and reassigned to DWCC Investigation Department.

- John Stanley is a Master Sergeant at DWCC and has been assigned to the Shakedown Team. FN.3
- Kristen Harper is a Classification Officer at DWCC and has been assigned to the south compound
- Danny Henshaw is a Classification Officer at DWCC and has been assigned to the south compound
- Sarah Nalitt is a Legal Liaison at DWCC and has been assigned to the Legal Programs Department. Her duties include, among other things, screening and processing all grievances and administrative remedy requests filed by the inmate population; as well as, administering the correspondences between the inmates and the officials and administrators of DWCC and the Department.
- Daniel Crook is a Doctor/Physician employed or contracted by the La.DPS&C, and is responsible for administering medical care to the inmates confined at DWCC.
- Angela Fussell is a Nurse Practitioner employed or contracted by the La.DPS&C, and is responsible for administering medical care to the inmates confined at DWCC.
- Judgeware is a Lieutenant at DWCC and has been assigned to the Mailroom. Her duties include, among other things, inspecting and administering all incoming and outgoing inmate mail at DWCC; as well as, supervising subordinate employees assigned to this Department.
- Johnson is a Master Sergeant at DWCC and has been assigned to the Mailroom.
- DWCC has security video surveillance inside N1, N2, N3, and N4; inside and outside the south compound Kitchen, Classification Office, Medical Center, Mailroom and Security Building. All security personel are required to wear audio-video body cameras and have them activated when handling inmates, esp. during and after incidents.
- DWCC prison officials are required to maintain and preserve any and all recordings (audio, video, documentary, etc.) in their entirety, for 4-5 years, following final disposition of administrative remedy requests, grievances, and disciplinary appeals. La.Admin.Code tit. 22,

---

FN3 John Stanley has been promoted to Lieutenant.

Pt I §§ 325 and 341.

- Inmates assigned to DWCC South Compound can request to see a doctor or physician by submitting sick call request; and, in which, medical care may be administered in the South Infirmary.
- Inmates assigned to DWCC South Compound can request to see a mental health counselor or social worker upon awaiting for the social worker to make routine rounds or declaring themselves a mental health emergency; and, in which, mental health treatment will be administered cell-side.
- La. DPS&C and DWCC receive some Federal Funding.
- At all times relevant and mentioned within this complaint, each defendant acted under color of state law.

## II. STATEMENT OF FACTS

3. Plaintiff incorporates all preceding paragraphs as if fully set forth below.
4. On January 25, 2025, at approx. 4:30 p.m., after being involved in an incident with Lieutenant Johnathan Wood[FN.4] between the South Compound building of N1 and N2 Walk while enroute to the south kitchen for dinner, Captain Michael Corley, Master Sergeant Jeroy Bryant, Master Sergeant Colin Rogers[FN.5] and Sergeant Daryl Burnell[FN.6] placed Jeremy Rachal ("Plaintiff") in handcuffs behind his back, and Captain Corley escorted Plaintiff to N1 Lobby along with Major Matthew Elmore.
5. Plaintiff was told to stand on the side of the Control Room between C and D Tiers; and, in which, Plaintiff did calmly and quietly for 10-15 minutes. Master Sergeant Martin was working N1.

---

FN.4 Johnathan Wood has been promoted to the rank of Captain.

FN.5 Colin Rogers has been promoted to the rank of Lieutenant.

FN.6 Daryl Burnell is no longer employed at DWCC.

6. Major Elmore and Captain Corley the escorted Plaintiff to N3 Lobby by escorting him out N1 backdoor through N2 Lobby and out it's backdoor to N3 where Plaintiff was again told to stand on the side of the Control Room between A and B Tiers; and, in which, Plaintiff did calmly and quietly for another 10 minutes. Master Sergeant Montgomery, Sergeant Coleman,[FN.7] and Sergeant Simpson[FN.8] was working N3.

7. Plaintiff was then escorted by Major Elmore and Captain Corley to the South Compound Security Building by going down the Walk pass the kitchen and Classification Office. Enroute Captain Corley went back to N3 to retrieve leg irons and placed them on Plaintiff's ankles without incident.

8. In the security building, Plaintiff was told to stand on the wall across from Asst. Warden Roderick Malcom office; and, in which, Plaintiff did calmly and quietly without incident for 20-25 minutes as Major Elmore and Captain Corley awaited the arrival of Colonel Vincent Coleman.

9. As Plaintiff awaited, he witnessed Captain R. Dario Fields, Captain Kemonte Taylor, and Major Keande Hay come in the security building for shift change; as well as, witnessed Master Sergeant Bellamy[FN.9] and two (2) caucasian female prison officials present in the security building.

10. Upon Colonel Coleman's arrival, he immediately grabbed Plaintiff roughly by the arm without provocation and escorted him out the security building to the classification office stating: "You wanna put your hands on my officers huh? I got something for you." Major Elmore and Captain Corley followed.

11. As they entered the classification office foyer to enter the main area, Colonel Coleman attempted to ram Plaintiff's head into the window which caused Plaintiff to turn to look backwards to see what he was doing. Major Elmore immediately sprayed Plaintiff with chemical agent in his face and eyes which caused Plaintiff to jerk right and buckle to his knees. Plaintiff was then plundered repeatedly with closed fist strikes to his face, head and body areas by Colonel Coleman, Major Elmore, and Captain Corley of which caused Plaintiff to fall to the floor where he felt numerous feet kick and

---

FN.7. Sergeant Coleman is no longer employed at DWCC.

FN.8 Sergeant Simpson is no longer employed at DWCC.

FN.9 Master Sergeant Bellamy has been promoted to the rank of Lieutenant.

stomp him all over his body.

12. Plaintiff was then dragged a few feet across the floor where he again received another series of closed fist strikes, kicks and stomps all over his body; as well as, another burst of chemical agent to his face.

13. After the last burst of chemical agent, Plaintiff was snatched off the floor and escorted out the classification office to N4B Tier, Cell #15.

14. While enroute to N4, Plaintiff overheard Colonel Coleman coach Major Elmore and Captain Corley into fabricating a story that Plaintiff attempted to headbutt one of the officers to justify their unreasonable and unnecessary use of excessive force.

15. Plaintiff was denied a shower which caused chemical agent to remain on his head, face and body well over 24-hours.

16. At no time did Plaintiff attempt to headbutt any officer to warrant the assault he received from Colonel Coleman, Major Elmore and Captain Corley. Plaintiff always walked at least 2 or 3 steps ahead of the officers with his back to them fully restrained in leg irons and handcuffed behind his back; calmly, quietly and noncombatively; and, in which, can and will be shown on any and all activated body-worn camera; as well as, security surveillance inside and outside the classification office, security building, medical, kitchen, N1, N2, N3 and N4.

17. Nevertheless, Plaintiff received a disciplinary infraction for a Rule 3 violation - Defiance - from Major Elmore who claimed Plaintiff attempted to headbutt him and Captain Corley which resulted in Major Elmore "administering a short burst of chemical agent to Plaintiff's facial area. (R. Disciplinary Appeal No. DWCC-2025-035).

18. On January, 31, 2025, a disciplinary hearing was held on Plaintiff in N2 Courtroom for a Rule 3 violation, among other things, with Lieutenant Colonel Jocelyn Bradford as Chairman of the Disciplinary Board.

19. At the hearing Lt. Colonel Bradford refused to allow Plaintiff to plead his case and found Plaintiff guilty of violating Rule 3 and sentenced him to (30) days Disciplinary Segregation. Plaintiff appealed the Disciplinary Board decision to Warden Michele Dauzat. On February, 24, 2025, Warden Dauzat found procedural error and that inmate was not allowed to present his statement, and remanded the matter for a rehearing. (R. Disciplinary Appeal No. DWCC-2025-035).

20. Plaintiff appealed Warden Dauzat decision to the La.DPS&C, Secretary Gary Wescott, whom rejected Plaintiff's appeal on April 30, 2025, until a Final disposition From the Warden. (R. Disciplinary Appeal No. DWCC-2025-035).

21. Plaintiff never received a rehearing in Disciplinary Appeal No. DWCC-2025-035.

22. Also, Plaintiff appealed the La.DPS&C (and/or Secretary Wescott) decision in Disciplinary Appeal No. DWCC-2025-035 to the Nineteenth Judicial District Court, East Baton Rouge Parish, Louisiana ("19thJDC"). Rachal v. La.DPS&C, 19th JDC. No. C-765208 Comm.C.

23. However, because the La.DPS&C, Secretary Wescott, Chief of Operations, Seth Smith, Warden Dauzat, Dep.Warden Brenda Acklin and Lt.Col. Bradford have all Failed to provide the Plaintiff a rehearing and/or File any response to the 19thJDC April 8, 2026 Order; the Plaintiff has been obstructed From seeking review of the Defendants decision in Disciplinary Appeal No. DWCC-2025-035, where the 19thJDC has been unable to dispose of the matter. The matter is currently awaiting the 19thJDC resolution. Rachal v. La.DPS&C, 19th JDC No. C-765208, Comm.C.

24. Moreover, due to Colonel Coleman, Major Elmore and Captain Corley unnecessary use of excessive Force, Plaintiff also Filed within DWCC inmate grievance system, an administrative remedy request ("ARP"); which Legal Liaison Sarah Nalitt logged as ARP No. DWCC-2025-0107. On or about February 20, 2025, Legal Liaison Nalitt backlogged ARP No. DWCC-2025-0107 until completion of other ARPs Plaintiff had pending in the system. (R. Ex. A).

25. Due to Legal Liaison Nalitt unreasonable and inappropriate backlogging of ARP No. DWCC-2025-0107, Plaintiff Filed a March 28, 2025 Correspondence/Complaint to Warden Dauzat where Legal Liaison Nalitt obstruction and mishandling of the inmate grievance system was causing a delay in seeking review and disposition of the grievance. (R. Exs. A, B ). Warden Dauzat never responded to Plaintiff's Correspondence/Complaint. (R. Ex. B).

26. On February 25, 2025, at approx. 10:00 a.m., Warden Dauzat made rounds on N4B Tier accompanied by Dep.Warden James Arnold, Asst.Warden Ryan Kimble, and Colonel Dakota Nalitt. Upon these officials reaching Cell#15, Plaintiff personally informed them of the January 25, 2025 physical assault in the classification office. Plaintiff advised these officials that the assault was committed without justification as a Form of retaliation for an incident that transpired earlier that day, between

Lt. Wood and him; and Further, Plaintiff requested Warden Dauzat, Dep. Warden Arnold, Asst. Warden Kimble and Colonel Nalitt intervention and investigation into Colonel Coleman, Major Elmore and Captain Corley physical assault, misconduct and abuse.

27. At the behest of Warden Dauzat, Plaintiff was advised that his allegations would not be investigated and that Plaintiff deserved what he got. Also, Plaintiff's mother, Sheila Rachal, even called DWCC and spoke with Warden Dauzat and Asst. Warden Malcom regarding the unnecessary use of excessive force; but Warden Dauzat and Asst. Warden Malcom refused to intervene and investigate the physical assault.

28. Thereafter, on March 3, 2025, Plaintiff submitted a retaliation ARP to Legal Liaison Nalitt to redress, Warden Dauzat, Dep. Warden Arnold, Asst. Warden Kimble, and Colonel Nalitt unreasonable failure or refusal to protect and investigate Plaintiff's allegations of excessive force, and Warden Dauzat, Dep. Warden Arnold, Asst. Warden Kimble, and Colonel Nalitt malfeasance in their aiding or abetting in the destruction or alteration of any evidence that could substantiate Plaintiff's allegations of excessive force. But, Legal Liaison Nalitt unreasonably failed or refused to process Plaintiff's ARP. (R. Ex. C). Nevertheless, Plaintiff resubmitted the ARP to the La. DPS&C, Secretary Wescott and Chief Smith, on April 7, 2025, whom also failed to process Plaintiff's ARP, correspond or aid him. (R. Ex. C).

29. On June 25, 2025, ARP No. DWCC-2025-0107 was processed into DWCC inmate grievance system; and on, July 31, 2025, Dep. Warden Achlin and Asst. Warden Malcom unreasonably denied Plaintiff's ARP upon accepting Colonel Coleman, Major Elmore, and Captain Corley credibility over more reliable and probative evidence (body-worn camera and security surveillance); and, in which, Plaintiff relied on to support his allegations. Plaintiff appealed Warden Achlin and Asst. Warden Malcom decision to the La. DPS&C, Secretary Wescott and Chief Smith, whom on October 31, 2025, denied ARP No. DWCC-2025-0107 without considering any body-worn camera or security surveillance. (R. ARP No. DWCC-2025-0107).

30. Moreover, on April 21, 2025, Plaintiff was transferred from DWCC to Louisiana State Penitentiary ("LSP"); but subsequently returned to DWCC on June 9, 2025.

31. Upon Plaintiff's return to DWCC, he was brought in front a Classification Review Board in which Warden Dauzat, Dep. Warden Achlin, Dep. Warden Arnold, Asst. Warden Kimble, Asst. Warden Malcom, Colonel Coleman,

Major Nathaniel Gillentine, Classification Officer Kristen Harper and Classification Officer Danny Henshaw where present in the south compound classification office. Kristen Harper asked Plaintiff whether he remember the incident between Lt. Wood and him and whether he remember allegations he made prior to his transfer that were to have occurred in the classification office. (Disciplinary Appeal No. DWCC-2025-035 and ARP No. DWCC-2025-0107). Kristen Harper also asked Plaintiff what he planned on doing regarding those matters. Plaintiff confirmed his recollection of the matters, stated that he planned on pursuing the matters and asked: "Why".

32. Warden Dauzat then told Plaintiff not to worry about it and stated: "he (Plaintiff) would find out when he get where he going". At the conclusion of the hearing, Major Gillentine escorted Plaintiff to his housing area; and, in which, Plaintiff was classified and assigned to N4B Tier Cell #1- Preventative Segregation Level 1 (an unauthorized segregation level that automatically relinquishes or limits an inmates canteen, telephone, television, electronic tablet, property, recreation, educational, vocational and rehabilitative program privileges or rights without the inmate being found guilty or sanctioned for a rule infraction).

33. Upon Plaintiff being placed on N4B Tier, he immediately realized why he had been assigned to that teir; because there was a well-known and documented enemy of Plaintiff (Cordell Wilder #755139) housed on that tier and the Defendants' were attempting to jeopardize the Plaintiff's health and safety, by having the Plaintiff seriously injured; and, in which, on June 16, 2025, Plaintiff and Wilder had another physical altercation that resulted in Plaintiff receiving abrasions and joint stiffness to his right wrist and elbow. (R.Ex.D).

34. Despite Defendants intentionally assigning Plaintiff to a housing unit with a well-known and documented enemy where it was reasonably foreseeable that Plaintiff and Wilder were going to have an altercation; nevertheless, Defendants' Warden Dauzat, Dep. Warden Achlin, Dep. Warden Arnold, Asst. Warden Kimble, Asst. Warden Malcom, Colonel Nalitt, Colonel Terrance Hauley, Kristen Harper and Danny Henshaw punished the Plaintiff unreasonably for their careless and reckless behavior by denying Plaintiff review board

35. Also, on June 16, 2025, upon DWCC prison officials taking Plaintiff on recreation, he came in contact with Lt. Reeves and Master Sergeant John Stanley in N4 lobby and inquired about his personal property. Plaintiff informed Lt. Reeves and M/Sgt. Stanley that he was on a deadline with the courts and he needed his legal documents returned at their earliest convenience to meet such deadline to prevent from being procedurally barred. But, Lt. Reeves and M/Sgt. Stanley advised Plaintiff that he was "special" and would have to speak with Colonel Coleman before the return of his personal property.

36. On June 17, 2025, at approx. 7:00 p.m., Colonel Coleman made rounds on N4 A Tier and upon passing Plaintiff's cell, #8, Colonel Coleman broadly stated: "If you want your property, you know what to do;" and, in which, Plaintiff neighbor, Curtis Scott, #494772, overheard Colonel Coleman's statement. (R. Ex. E ). At that moment, the only inference Plaintiff could conclude from Colonel Coleman's statement was unless Plaintiff withdraw Disciplinary Appeal No. DWCC-2025-035 and ARP No. DWCC-2025-0707; Colonel Coleman, Lt. Reeves and M/Sgt. Stanley were going to withhold Plaintiff's personal property, including his legal documents.

37. Due to Colonel Coleman, Lt. Reeves and M/Sgt. Stanley withholding of Plaintiff's legal documents, Plaintiff missed a filing deadline in the 19th JDC regarding Disciplinary Appeal No. DWCC-2025-035. See also, Rachel v. La DPS&C, 19th JDC No. C-765208, Comm. C..

38. On June 18, 2025, Plaintiff submitted an ARP through DWCC inmate grievance system seeking to redress Colonel Coleman, Lt. Reeves and M/Sgt. Stanley withholding of his legal documents and obstruct of his right to access the courts; but Legal Liaison Nalitt refused to process Plaintiff's grievance. (R. Ex. C). On July 7, 2025, Plaintiff resubmitted the June 18, 2025, ARP to the La. DPS&C, Secretary Wescott and Chief Smith, whom also failed or refused to process Plaintiff's grievance. (R. Ex. C).

39. For Warden Dauzat, Dep. Warden Achlin, Dep. Warden Arnold, Asst. Warden Kimble, Asst. Warden Malcom, Colonel Coleman, Major Gillentine, Kristen Harper and Danny Henshaw unreasonable classification and assignment of Plaintiff to a housing area with Cordell Wilder (755139); Plaintiff sought to redress the Defendants' retaliation and dangerous actions through the June 18, 2025 ARP; but Legal Liaison Nalitt, La. DPS&C, Secretary Wescott and Chief Smith

failed or refused to process Plaintiff's grievance. (R. Exs. C, D).

40. Also, Plaintiff sought to challenge Warden Dauzat, Dep. Warden Achlin, Dep. Warden Arnold, Asst. Warden Kimble, Asst. Warden Malcom, Colonel Coleman, Major Gillentine, Kristen Harper and Danny Henshaw classification and assignment of him to an unauthorized segregation level (Preventative Segregation Level 1) in a June 20, 2026 Classification Review Board Appeal that Plaintiff submitted to Legal Liaison Nalitt, La. DPS&C, Secretary Wescott and Chief Smith (R. Ex. F ) because Plaintiff was being subjected to: (1) 23-24 hours per day locked in a small unsanitary cell; (2) denial of meaningful human contact and outside exercise; minimum or no access to educational, vocational or rehabilitative programs; (4) sensory deprivation, denial of adequate hygiene, clothing, and basic necessities; (5) excessive noise and extreme weather temperatures; and (6) mental and physical deteriorations; where without Plaintiff being found guilty of any rule violation, Defendants', by assigning Plaintiff to Preventative Segregation Level 1, automatically relinquished or limited Plaintiff's canteen, telephone, visitation, television, electronic tablet, recreation, educational, vocational and rehabilitative program privileges; and, in which, Plaintiff alleges subjected him to a atypical and significant hardship in relation to the ordinary incidents of prison life. However, Legal Liaison Nalitt, La. DPS&C, Secretary Wescott and Chief Smith refused to process Plaintiff's grievance. (R. Ex. F

41. Moreover, on September 22, 2025, Plaintiff was again transferred from DWCC to Louisiana State Penitentiary; but subsequently returned on October 27, 2025.

42. Upon Plaintiff's return to DWCC, he was again brought in front the Classification Review Board. in which, Warden Dauzat, Dep. Warden Achlin, Dep. Warden Arnold, Asst. Warden Kimble, Asst. Warden Malcom, Colonel Terrance Hauley and Kristen Harper were present.

43. Warden Dauzat asked Plaintiff if he reconsidered withdrawing Disciplinary Appeal No. DWCC-2025-035 and ARP No. DWCC-2025-0107; and, in which, Plaintiff replied: "Negative". Due to Plaintiff's response, he was classified and assigned to Preventative Segregation Level 1 in N4.

44. On November 5, 2025, at approx. 1:00 a.m. - 3:00 a.m. Major Elmore, Captain Davis, M/Sgt. Jesse Parks and M/Sgt. Jerry Kirk informed Plaintiff, per orders of Warden Dauzat, Dep. Warden Arnold, Asst. Warden Malcom and Colonel Hawley, he would have to dispose of his personal property or send it home. They advised Plaintiff, if he refused to sign the property form(s) he would not be allowed to have his legal documents and that they were unaware of any specific reason(s) for the order.

45. Due to the order of Warden Dauzat, Dep. Warden Arnold, Asst. Warden Malcom and Colonel Hawley; Plaintiff lost: (1). Four (4) Gray Medium Sweatshirts that were $22.48/ea.; (2). Two (2) Gray Medium Sweatpants that were $24.59/ea.; (3). One (1) White Medium Thermal Top that was $6.00; (4) One (1) White Medium Thermal Bottom that was $6.42; (5). Two (2) Black AM/FM Radios that were $24.72/ea.; (6). Two (2) Earphones w/ Mic that were $6.60/ea.; (7). Three (3) Conair Beard Trimmers that were $21.17/ea.; and (8). Fifteen (15) Books; Knowledge of Self ($17.00); Science of Self ($17.00); Black God ($17.00); When the World was Black ($17.00) - all by Supreme Understanding; Stolen Legacy ($12.00); Malcom X Talks to Young People ($12.00); My Bondage and My Freedom by Fredrick Douglass ($12.00); The Art of War by Sun Tzu ($10.00); Felon Fitness ($25.00); The Richest Man in Babylon by George Cleason ($10.00); The New Jim Crow by Michelle Alexander ($25.00); Essential Lawyering Skills ($25.00); The Bipolar Disorder Survival Guide ($30.00); The Practicing Mind ($15.00); and the Mind in the Making ($15.00). (R.Ex.G).

46. Plaintiff submitted a Lost Property Claim dated November 10, 2025, to Legal Liaison Nalitt, La. DPS&C, Secretary Wescott and Chief Smith; but they failed or refused to process Plaintiff's grievance. (R.Ex.G).

47. Also, on December 29, 2025, Plaintiff initially attempted to file the instant 42 U.S.C. §1983 civil action in this Court by providing his legal mail to M/Sgt. Daryl Island[FN.10] with a completed Inmate Fund Withdrawal Request; and, in which, M/Sgt. Island advised Plaintiff he put in

---

FN.10. Daryl Island is no longer employed at DWCC.

Colonel Hauley mailbox for approval, per protocol.

48. However, Colonel Hauley, in an attempt to obstruct and prevent Plaintiff's initial Filing, intercepted, lost or destroyed Plaintiff's legal documents. This resulted in Plaintiff being forced to mail the initial Filings (R.Doc. No.(s). 1, 2 ) in another inmates name["D.J."] FN.11 to prevent further obstruction; and, in which could be evidenced by R.Doc. No. 1, Attachment.

49. On January 26, 2026, Plaintiff submitted an ARP to Legal Liaison Nalitt, La. DPS&C, Secretary Wescott and Chief Smith seeking to redress Colonel Hauley obstruction of his right to access the courts by giving the same to M/Sgt. Island with an Inmate Fund Withdrawal Request; but Plaintiff's ARP was never processed. (R. Ex. H).

50. On February 3, 2026, Colonel Hauley made rounds on N4B Tier, between the hours of 7:00 a.m. - 12:00 p.m., and upon Hauley passing Plaintiff cell, #11, Plaintiff made contact with Hauley regarding the lost of his legal documents. Colonel Hauley told Plaintiff that he would not be filing any lawsuit with his name in it, that Plaintiff was under his control, and that Plaintiff would apologize to him for including his name in the lawsuit before he would let Plaintiff out of N4.

51. On August 27, 2026, Plaintiff received a rejection notification from DWCC Mailroom regarding two (2) Family photographs sent to Plaintiff from Dustin Rachal (Plaintiff's brother) through FreePrint Pictures LLC; and, in which, the rejection reason claimed to be for children not having shirts on. Plaintiff finding this absurd, went to the Mailroom on August 28, 2026, and made contact with Lt. Judgewear and M/Sgt. Johnson. Plaintiff informed Judgewear and Johnson that their rejection was unreasonable and served no legitimate penological justification because he was not a sex offender. They advised Plaintiff that, per orders of Warden Dauzat, he could have his pictures if he withdraw the current lawsuit. Plaintiff asked them how were they aware of any lawsuit when no one has been served. They advised Plaintiff that he just received legal mail the other day (August 25, 2026) and that there was a website called Pacermonitor. (R. Ex. I)

---

FN.11 [D.J.] was transferred to Louisiana State Penitentiary, Angola, La.

52. Plaintiff refused withdrawing the instant matter and Judgeware and Johnson refused Plaintiff's pictures.

53. Due to Colonel Coleman, Major Elmore and Captain Corley unreasonable and unnecessary use of excessive force; Plaintiff has been compelled to make repeated sick calls seeking medical attention on January 27, 2025 for swelling of thigh, headache and pain and swelling to right wrist and elbow; on January 28, 2025 for memory loss and headaches; on February 17, 2025, for swelling to thigh, right wrist and elbow and headaces; on March 24, 2025 for headaches and memory loss; on June 17, 2025, pain and swelling to right wrist and elbow; on July 3, 2025 for Hemorrhoid; on July 21, 2025, for irritated and constricted foreskin; July 22, 2025 for headache and memory loss; on July 24, 2025 for swelling of thigh; on August 13, 2025 for hemorrhoid; on November 17, 2025 for headache and memory loss; on December 9, 2025 for irritated and constricted foreskin, swelling of thigh, blurred vision, memory loss and headache; on February 10, 2026 for swelling of thigh; and on March 9, 2026 for swelling of thigh; and, in which, after being assessed "cell-side"; Plaintiff was referred to see Angela Fussell or Daniel Crook. However, upon Angela Fussell and Daniel Crook assessing Plaintiff for some odd reason they always asked Plaintiff: "they say you like to file ARPs"?, "Do you plan on dropping any of them?". Upon Plaintiff replying "No."; Angela Fussell and Daniel Crook would always conclude their medical assessment with they would refer Plaintiff to an outside specialist. (R.Ex.J).

54. Angela Fussell and Daniel Crook delay in treating Plaintiff's foreskin resulting in the severance of the foreskin. Despite outside specialist prescribing Plaintiff [Keper] medication for the headaches and memory loss resulting from the subdural hematoma and brain surgery; Angela Fussell and Daniel Crook denied Plaintiff the Keper and gave him a caffine pill; and, in which, has compelled Plaintiff to suffer from the headaches and memory loss resulting in Plaintiff under-going anxiety, insomnia, depression, irritable moods, lack of concentration and attention; and feeling a sense of helplessness and worthlessness. Angela Fussell and Daniel Crook has emphatically failed to treat the pain and swelling of Plaintiff's thigh.

55. Moreover, it is well-known and documented that Plaintiff in 2023, underwent brain surgery for a subdural hematoma - a life-threatening brain injury - and has a mental-health diagnostic history of a Depressive Disorder, Bipolar Disorder, Impulse Control Disorder, Personality Disorder, Borderline Antisocial with Paranoid traits. (R. Ex. K). Despite Plaintiff's mental-health diagnostic history; although Plaintiff has been prescribed Zyprexa and Visril medications for treatment, Warden Dauzat, Dep. Warden Brenda Acklin and Asst. Warden James Burgos has emphatically denied Plaintiff mental-health counseling while in segregation where Plaintiff is unable to confidentially discuss his mental-health issues with a counselor or social worker and cannot be provided documentary mental health assignments or exercises to help him cope with the issues; and, in which, has caused Plaintiff's medical and mental-health conditions to deteriorate, resulting in headaches, memory loss, anxiety, insomnia, elevated and irritable moods, grandiosity, sleeplessness, extravagance, erratic behavior, tendency toward irrational judgments, episodes of depression (including lethargy, a sense of worthlessness and helplessness; and a lack of concentration and attention.

56. Defendants' abuse and misconduct violated Plaintiff's rights guaranteed by the First, Eighth and Fourteenth Amendments of the United States Constitution.

## III. CLAIMS FOR RELIEF

### COUNT I - Excessive Force (Eighth Amendment)

(42 U.S.C. § 1983)

57. Plaintiff alleges that on January 25, 2025, in DWCC South compound Classification Office, Defendants Colonel Coleman, Major Elmore, and Captain Corley used excessive force against Plaintiff by unnecessarily and wantonly inflicting pain upon Plaintiff by repeatedly punching and kicking him, and spraying him with chemical agent when Plaintiff was noncombative and was not resisting any order or command, and was fully restrained in leg irons and handcuffed behind his back; and, in which, caused Plaintiff headaches,

memory loss, blazing and fiery eyes, faces and skin, swollen thigh, abrasions to wrist and elbow, and irritated and constricted foreskin that required in severance of foreskin, hemorrhoids, depression, paranoia, anxiety, insomnia, sleeplessness, elevated and irritable moods, mental deterioration, and a sense of worthlessness and helplessness, and a lack of concentration and attention; in violation of Plaintiff's Eighth Amendment rights. Hudson v. McMillian, 503 U.S. 1 (1992); Whitley v. Albers, 475 U.S. 312 (1986).

## COUNT 2 - Retaliation For Exercising First Amendment Right of Access of Courts (42 U.S.C. §1983)

58. Plaintiff alleges that he was engaged in protected activity upon filing and vindicating Disciplinary Appeal No. DWCC-2025-035, ARP No. DWCC-2025-0107, Correspondence/Complaint dated March 28, 2025 (R.Ex. B), Retaliation Grievances dated March 3, 2025 and June 18, 2025 (R.Ex. C ), Classification Review Board Appeal dated June 20, 2025 (R.Ex. F), Lost Personal Property Grievance dated November 10, 2025 (R.Ex. G) Grievance [ARP] dated January 26, 2026 (R.Ex. H); as well as, filing and pursuing Rachal v. La.DPS&C, 19th JDC No. C-765208- Comm. C; and Rachal v. La.DPS&C, No. 26-403-P (U.S.D.C. W.D.La.).

59. Plaintiff alleges that Defendants Colonel Coleman, Major Elmore and Captain Corley knowingly and willfully, falsifying documents, making false statements or omitting important facts on official reports (including but not limited to disciplinary reports, incident reports, log books, investigation reports, unusual occurrence reports, accident reports, employee violation reports, and time and attendance records), and knowingly and willfully altered, destroyed, or made unavailable, any and all relevant and material audio and video recordings (including but not limited to official body-worn cameras and security surveillance footage) regarding their January 25, 2025 unnecessary and unreasonable use of excessive force against Plaintiff; and that Defendants retaliated against Plaintiff, knowingly and deliberately, to obstruct and hinder Plaintiff's right to access of the courts and prevent Plaintiff from redressing their abuse and misconduct alleged in Rachal v. La.DPS&C, 19th JDC. No. 765208- Comm. C.; and Rachal v. La.DPS&C No. 26-403-P (U.S.D.C. W.D.La.).

and Disciplinary Appeal No. DWCC-2025-035, and ARP No. DWCC-2025-0107.

60. Plaintiff alleges that upon Defendants LaDPS&C, Secretary Wescott, Chief Smith, Warden Dauzat, Dep. Warden Achlin, Dep. Warden Arnold, Asst. Warden Kimble, Asst. Warden Malcom, Colonel Nalitt, Lt. Colonel Bradford, and Legal Liaison Nalitt knowingly and willfully refusing or failing to reasonably investigate, file or process Plaintiff's grievances - Disciplinary Appeal No. DWCC-2025-035, ARP No. DWCC-2025-0107, Correspondence/Complaint dated March 28, 2025 (R. Ex. B), Retaliation Grievances dated March 3, 2025 and June 18, 2025 (R. Ex. C ), Classification Review Board Appeal dated June 20, 2025 (R. Ex. F), Lost Personal Property Grievance dated November 10, 2025 (R. Ex. G), and Grievance [ARP] dated January 26, 2026 (R. Ex. H) - and aiding and abetting in the falsifying of documents and the alteration, or destruction of all relevant and material audio and video recordings related to said grievances; Defendants knowingly and deliberately retaliated against Plaintiff to obstruct and hinder his right of access of the courts, and prevent Plaintiff from redressing the Defendants misconduct and abuse alleged in Rachal v. LaDPS&C, 19th JDC No. C-765208-Comm. C.; and Rachal v. LaDPS&C No. 26-403-P (USDC. WD. La.).

61. Plaintiff alleges that upon Defendants LaDPS&C, Secretary Wescott, Chief Smith, Warden Dauzat, Dep. Warden Arnold, Asst. Warden Malcom, Colonel Coleman, Colonel Hauley, Major Elmore, Lt. Reeves and M/Sgt. Stanley, knowingly and willfully, withholding and destroying Plaintiff's personal property and legal documents; Defendants knowingly and deliberately retaliated against Plaintiff for refusing to withdraw Disciplinary Appeal No. DWCC-2025-035 and ARP No. DWCC-2025-0107 to obstruct and hinder Plaintiff's right of access of the courts and prevent Plaintiff from redressing the Defendants abuse and misconduct alleged in Rachal v. La.DPS&C, 19th JDC No. C-765208-Comm. C; and Rachal v. La.DPS&C, No. 26-403-P (USDC. W.D. La.).

62. Plaintiff alleges that upon Defendants La.DPS&C, Warden Dauzat, Dep. Warden Achlin, Dep. Warden Arnold, Asst. Warden James Burgos, Angela Fussell, and Daniel Crook knowingly and willfully subjecting Plaintiff to deliberate indifference by denying him adequate medical care regarding his sick call request dated January 27, 2025 for swelling of thigh, headache and

pain and swelling to right wrist and elbow; January 28, 2025 For memory loss and headaches; February 17, 2025 For swelling to thigh, right wrist and elbow and headaches; March 24, 2025 For headaches and memory loss; June 17, 2025 pain and swelling to right wrist and elbow; July 3, 2025 For hemorrhoid, July 21, 2025 For irritated and constricted Foreskin; July 22, 2025 For headache and memory loss; July 24, 2025 For swelling of thigh, August 13, 2025 For hemorrhoid, November 17, 2025 For headache and memory loss; December 9, 2025 For irritated and constricted Foreskin, swelling of thigh, blurred vision, memory loss and headache; February 10, 2026 For swelling of thigh; and March 9, 2026 For swelling of thigh; as well as, denying Plaintiff adequate mental health care for refusing to withdraw Disciplinary Appeal No. DWCC-2025-035 and ARP No. DWCC-2025-0107; Defendants knowingly and deliberately retaliated against Plaintiff to obstruct and hinder Plaintiff's right of access of the courts and prevent Plaintiff From redressing Defendants abuse and misconduct alleged in Rachal v. LaDPS&C, 19th JDC. No. C-765208-Comm. C; and Rachal v. La.DPS&C No. 26-403-P (USDC W.D. La.).

63. Plaintiff alleges that upon Defendants Warden Dauzat, Dep. Warden Achlin, Dep. Warden Arnold, Asst. Warden Kimble, Asst. Warden Malcom, Colonel Coleman, Colonel Nalitt, Colonel Hauley, Major Gillentine, Kristen Harper and Danny Henshaw, knowingly and willfully, classifying and assigning Plaintiff to Preventative Segregation Level I (an unauthorized segregation level) and placing him on a tier with a well-known and documented enemy (Cordell Wilder 755139) to subject Plaintiff to prolong and indefinite isolation and segregation confinement under extremely harsh and atypical conditions without legitimate justification or due process and attempting to cause Plaintiff substantial physical injury or harm for refusing to withdraw Disciplinary Appeal No. DWCC-2025-035 and ARP No. DWCC-2025-0107; Defendants knowingly and deliberately, retaliated against Plaintiff to obstruct and hinder his right of access of the court and prevent Plaintiff From redressing the Defendants abuse and misconduct alleged in Rachal v. LaDPS&C, No. 26-403-P (USDC W.D. La.); and Rachal v. LaDPS&C 19th JDC No. C-765208-Comm. C.

64. Plaintiff alleged that upon Defendants Warden Dauzat, Lt. Judgeware and M/Sgt. Johnson

knowingly and willfully rejecting Plaintiff's family photographs without legitimate penological justification on August 27-28, 2026 for Plaintiff refusing to withdraw Rachal v. LaDPS&C No. 26-403-P (USDC W.D. La.); Defendants knowingly and deliberately retaliated against Plaintiff to obstruct and hinder his right of access of the courts, and prevent Plaintiff from redressing the Defendants' abuse and misconduct alleged in Rachal v. LaDPS&C No. 26-403-P (USDC W.D. La.).

65. Plaintiff alleges that Defendants retaliation and obstruction of his First Amendment of access of the court has caused him a delay in vindicating Rachal v. LaDPS&C 19th JDC. No. C-765208-Comm. C and Rachal v. LaDPS&C No. 26-403-P (USDC W.D. La.) and redressing the Defendants misconduct and abuse alleged herein; a denial of adequate medical and mental health care; and prolong and indefinite isolation and segregation confinement under extremely harsh and atypical conditions without legitimate justification or due process; and, in which, has resulted in Plaintiff experiencing headaches, memory loss, swollen and pain in thigh, irritated and constricted foreskin requiring severance of foreskin, paranoia, anxiety, insomnia, sleeplessness, elevated and irritable moods, mental deterioration, depression (lethargy, a sense of worthlessness and helplessness and a lack of concentration and attention), 23-24 hours per day locked in a small unsanitary cell, denial of meaningful human contact and outside exercise, minimum or no access to educational, vocational or rehabilitative programs, sensory deprivation, lost of property, denial of adequate hygiene clothing and basic necessities, excessive noise and extreme weather temperatures; and mental and physical deteriorations; in violation of the First, Eighth and Fourteenth Amendments. Woods v. Smith, 60 F.3d 1166 (5th Cir. 1995); Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005); See also, Farmer v. Brennan, 511 U.S. 825 (1994); Domino v. Texas Dept. of Criminal Justice 239 F.3d 752 (5th Cir. 2001); and Sandin v. Conner, 515 U.S. 472 (1995); Wilkerson v. Goodwin, 774 F.3d 845 (5th Cir. 2014).

COUNT 3 - Deliberate Indifference to Serious Medical and Mental Health Needs

(Eighth Amendment; 42 U.S.C. §1983)

66. Plaintiff alleges that Defendants La.DPS&C, Warden Dauzat, Dep. Warden Achlin, Asst. Warden Burgos, Angela Fussell and Daniel Crook knew of Plaintiff's serious medical and psychiatric conditions regarding his well-known and documented mental health history of Depressive Disorder, Bipolar Disorder, Impulse Control Disorder, Personality Disorder, Borderline Antisocial and Paranoid traits, medical history of a subdural hematoma; as well as, the repeated sick calls Plaintiff requested on January 27, 2025, for swelling of thigh, headache and pain and swelling to right wrist and elbow; January 28, 2025 for memory loss and headaches; February 17, 2025 for swelling to thigh, right wrist and elbow and headaches; March 24, 2025 for headaches and memory loss; June 17, 2025 for pain and swelling to right wrist and elbow; July 3, 2025 for hemorrhoid, July 21, 2025 for irritated and constricted foreskin, July 22, 2025 for headache and memory loss; July 24, 2025 for swelling to thigh, August 13, 2025 for hemorrhoid; November 17, 2025 for headache and memory loss; December 9, 2025 for irritated and constricted foreskin; swelling of thigh, blurred vision, memory loss and headache; February 10, 2026 for swelling of thigh, and March 9, 2026 for swelling of thigh; and that Defendants knowingly and deliberately disregarded the substantial risk of serious harm upon deliberately failing or refusing to appropriately assess, diagnose and treat Plaintiff's serious medical and mental health conditions; failing or refusing to forward Plaintiff to an outside specialist for diagnoses and treatment; failing or refusing to provide Plaintiff mental health counseling socially or individually while exposing Plaintiff to prolong and indefinite isolation and segregation confinement under extremely harsh and atypical conditions without legitimate justification or due process.

67. Plaintiff alleges that Defendants deliberate indifference to his serious medical and mental health needs has unreasonably subjected Plaintiff to extreme headaches, memory loss, swelling and pain in thigh, irritated and constricted foreskin requiring severance of foreskin, physical and mental deteriorations, paranoia, anxiety, insomnia, sleeplessness, elevated and irritable moods, erratic behavior, irrational judgments, depression (including lethargy, a sense of worthlessness and helplessness and a lack of concentration and attention); 23-24 hours per day locked in a small unsanitary cell; denial of meaningful human

contact and outside exercise, minimum or no access to educational, vocational or rehabilitative programs, sensory deprivation, denial of adequate hygiene, clothing and basic necessities, excessive noise and extreme weather temperatures, in violation of the Eighth Amendment. See, Farmer v. Brennan, 511 U.S. 825 (1994); Gobert v. Caldwell, 463 F.3d 339 (5th Cir. 2006).

COUNT 4 - Unconstitutional Conditions of Confinement and Indefinite Isolation

(Eighth and Fourteenth Amendments)

68. Plaintiff alleges that Defendants Warden Dauzat, Dep. Warden Achlin, Dep. Warden Arnold, Asst. Warden Kimble, Asst. Warden Malcom, Colonel Coleman, Colonel Nalitt, Colonel Hawley, Major Gillentine, Krister Harper and Danny Henshaw, knowingly and willfully, classified and assigned Plaintiff to Preventative Segregation Level 1 (an unauthorized segregation level) on June 9, 2025 and October 27, 2025, that Defendants knew unreasonably relinquished or limited Plaintiff's canteen, telephone, television, electronic tablet, personal property, recreation, educational, vocational, and rehabilitative program privileges without legitimate justification or due process; and unreasonably exposed Plaintiff to extremely harsh and atypical conditions where Plaintiff was subjected to: (1) 23-24 hours per day locked in small unsanitary cell; (2) denial of meaningful human contact and outside exercise; (3) minimum or no access to educational, vocational or rehabilitative programs; (4) sensory deprivation, denial of adequate hygiene, clothing and basic necessities; (5) excessive noise and extreme weather temperatures; and (6) mental and physical deteriorations.

69. Plaintiff alleges that Defendants unconstitutional prolong and indefinite isolation and segregation confinement of him under extremely harsh and atypical conditions without legitimate justification or due process; unreasonably caused him to endure extreme headaches, memory loss, anxiety, insomnia, elevated and irritable moods, erratic behavior, grandiosity, sleeplessness, extravagance, tendency towards irrational judgments, stiff and aching muscle and joints; as well as, episodes of depression (including lethargy, a sense of worthlessness and helplessness, and a lack of concentration and attention), in violation of La. DPS&C

policy and the Eighth and Fourteenth Amendments. See, Wilkerson v. Stalder, 639 F.Supp.2d 654 (M.D.La. 2007); Hernandez v. Velasquez, 522 F.3d 556 (5th Cir. 2008); Wilkinson v. Austin, 545 U.S. 209 (2005); La. Admin. Code tit. 22, Pt1 § 341.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jeremy Rachal, (590548), prays that this Honorable Court:

(1). Issue declaratory judgment that Defendants' actions violated Plaintiff's constitutional rights under the First, Eighth and Fourteenth Amendments.

(2). Grant injunctive relief ordering Defendants' to: (a). Immediately cease their physical violation, threats, and hostile acts toward Plaintiff; (b). Immediately cease their retaliation tatics toward Plaintiff; (c). Immediately cease and refrain from obstructing Plaintiff's right to access of the courts and grievance procedure; (d). Immediately provide Plaintiff the necessary medical care and implement treatment plans for Plaintiff's neurological therapy, swollen right thigh, and irritated and constricted foreskin; (e). Immediately implement treatment plans and take steps to provide Plaintiff mental health care and counseling consistent with his mental health illnesses; and (f). Immediately cease their unauthorized practice and segregation level of Preventative Segregation Level I and implement due process plans and safeguards regarding Defendants' unauthorized relinquishments and limitations of Plaintiff's canteen, telephone, television, electronic tablet, personal property, recreation, and educational, vocational, and rehabilitative program privileges.

(3). Award compensatory and punitive damages against each Defendant, jointly and severally, in an amount to be determined at trial.

(4). Award costs of suit and reasonable attorney fees under 42 U.S.C. § 1988; and

(5). Grant any other relief this Court deems just and proper.

## V. JURY DEMAND

Plaintiff hereby demands trial by jury on all issues triable by jury.

Respectfully submitted this 16th day of September, 2026.

(PLAINTIFF SIGNATURE)

Jeremy X. Rachal (590548)
David Wade Correctional Center
670 Bell Hill Road
Homer, Louisiana 71040

## AFFIDAVIT/VERIFICATION

I, Jeremy Rachal (590548), Plaintiff, do hereby declare under penalty of perjury that the facts set forth in this Motion for Leave to Amend Original Complaint Pursuant to 42 U.S.C. §1983 are true and correct to the best of my knowledge, information, or belief.

Executed in Homer, Louisiana this 16th day of September, 2026.

Jeremy X. Rachal (590548)